**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**NATIONAL HEALTHCARE AFFILIATES, INC.,**

                   **Plaintiff,**               **01-CV-0798A(Sr)**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY,**

                   **Defendant.**

─────────────────────────────────


**MARK E. HAMISTER, OLIVER HAMISTER,**
**GEORGE HAMISTER, HEALTH SERVICES OF**
**NORTHERN NEW YORK, INC., BROMPTON**
**HEIGHTS, INC., and ORCHARD HEIGHTS, INC.,**

                   **Plaintiffs**              **06-CV-0600A(Sr)**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY,**
**LIBERTY MUTUAL ACQUISITION COMPANY, f/k/a**
**LIBERTY MUTUAL FIRE INSURANCE COMPANY,**
**LIBERTY INSURANCE CORPORATION,**
**LM INSURANCE CORPORATION,**
**THE FIRST LIBERTY INSURANCE CORPORATION,**
**and HELMSMAN MANAGEMENT SERVICES, INC.,**

                   **Defendants.**

─────────────────────────────────


<u>**REPORT, RECOMMENDATION AND ORDER**</u>

       These actions were referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  01-CV-798 at Dkt. # 6; 06-CV-600 at Dkt. #7.  By

Order entered September 22, 2008, the actions were consolidated under civil action 01-CV-798. 06-CV-600 at Dkt. #63. By agreement of the parties, civil action 06-CV-600 is being held in abeyance pending resolution of 01-CV-798.

Currently before me is defendant Liberty Mutual Insurance Company's ("Liberty Mutual's"), motion for sanctions, including striking plaintiff National Health Care Affiliates, Inc.'s ("NHCA's"), pleadings or precluding plaintiff from arguing that defendant failed to properly handle a claim, handled a claim in bad faith or that defendant's handling of a claim imposed upon plaintiff an improper deductible obligation, unless plaintiff provides an affidavit, under oath, demonstrating that NHCA has preserved and produced all relevant documents, including electronic documents, in existence at the relevant local offices on the date NHCA commenced this action. Dkt. #124. Liberty Mutual also seeks an award of costs and expenses, including attorneys' fees, incurred in seeking production of these documents. Dkt. #124.

For the reasons that follow, it is recommended that Liberty Mutual's motion be granted in part.

**BACKGROUND**

The plaintiffs in the consolidated actions are insureds, or successors-in-interest to insureds, under Workers' Compensation and Employers Liability Policies ("Policies"), issued to NHCA in 1996 and 1997 covering workers' compensation claims in Arizona, Colorado, Florida and New York. Dkt. #1, Exh. A, ¶¶ 3-4. The policies

provide an annual $500,000 deductible for each occurrence with respect to "Bodily

Injury By Accident;" a $500,000 deductible for each claim with respect to "Bodily Injury

By Disease;" and a $3,000,000 aggregate deductible with respect to "All Covered Bodily

Injury." Dkt. #1, Exh. A, ¶ 7. NHCA is responsible up to the deductible amounts for a

total of "all benefits required of NHCA by the workers compensation law;" "all sums

[NHCA] legally must pay as damages;" and "all 'allocated loss adjustment expense' as

part of any claim or suit [defendant] defend[s]." Dkt. #1, Exh. A, ¶ ¶ 8, 12. Liberty

Mutual is responsible for any benefits, damages and allocated loss adjustment

expenses that exceed the applicable deductible amounts. Dkt. #1, Exh. A, ¶ 9.

NHCA commenced this action on October 29, 2001, generally claiming

that Liberty Mutual mishandled workers' compensation claims, causing NHCA to pay

deductible obligations in excess of the value of the underlying claims. Dkt. #1, Exh. A.

NHCA's Amended Complaint alleges two causes of action: breach of contract and

breach of the duty of good faith and fair dealing. Dkt. #114. Liberty Mutual

counterclaims that NHCA has not paid a total in excess of $600,000 in deductible

obligations and interest. Dkt. #115.

By Notice to Produce dated October 1, 2004, Liberty Mutual requested

copies of all tapes, transcripts, or other documents reflecting communications between

NHCA and Liberty Mutual. Dkt. #124-7. In response, NHCA stated it possessed no

documents reflecting communications between NHCA and Liberty Mutual other than

the documents it had already produced. Dkt. #124-7.

By Second Notice to Produce dated November 24, 2004, Liberty Mutual requested all workers' compensation claim files maintained by NHCA for the relevant claims. Dkt. #124-8. In response, NHCA stated that it "cannot locate any 'claims files' relating to the policies at issue in this litigation, except to the extent any papers already produced fall within [Liberty Mutual's] definition of claims files." Dkt. #124-8.

In an April 28, 2005 supplement to Liberty Mutual's Second Notice to Produce, NHCA advised that other than the claims files which Liberty Mutual provided to NHCA during the course of discovery, NHCA did "not have a collection of papers than can be fairly described as a claims file, when compared to the claims files defendant has produced." Dkt. #124-9. NHCA further indicated that it did possess "isolated documents pertaining to certain claims, such as first report of injuries, summary reports and pleadings/orders/letters from counsel retained by defendant to defend the claim referred to in the pleadings/orders/letters" which were "Bates numbered and . . . produced to counsel for defendant months ago." Dkt. #124-9.

During his 30(b)(6) deposition concerning NHCA's maintenance and retention of documents relating to the workers' compensation claims being handled by Liberty Mutual, NHCA's President and Chief Operating Officer, Jack Turesky, testified that he assumed responsibility for workers' compensation issues at NHCA beginning in 1998. Dkt. #124-12, p.6. Mr. Turesky denied possession of any files concerning contact with Liberty Mutual representatives with respect to the workers' compensation policies. Dkt. #124-12, p.9. When asked if NHCA maintained any documents

concerning communications with Liberty Mutual representatives, Mr. Turesky denied knowledge of any such documents.  Dkt. #124-12, pp.9-10.

Mr. Turesky could not recall the date, but testified that he verbally requested a search of NHCA's storage sites and went through his own files in search of documents relevant to this action.  Dkt. #124-12, pp.11-12.  He did not recall requesting anyone to search computer files.  Dkt. #124-12, pp.13 & 15-16.  When asked who was responsible for maintaining files with respect to open claims, Mr. Tuersky testified that there weren't any such files, to his knowledge.  Dkt. #124-12, pp.19-20.  Mr. Turesky was then presented with NHCA's supplement to Liberty Mutual's Second Notice to Produce indicating that the NHCA offices sold to Genesis Health Ventures, Inc. may have maintained a file for the claimants employed at that local office and asked whether other NHCA offices might also have maintained their own files.  Dkt. #124-12, pp.21-22. In response to that question, Mr. Turesky denied any knowledge of what documents, if any, NHCA offices may have kept on their premises.  Dkt. #124-12, pp.21-22.

In an affidavit in response to this motion, Mr. Turesky states:

After this matter went to litigation, eventually I was asked by Kavinoky Cook LLC, plaintiffs' prior counsel, in response to the defendant's document demands . . . to assemble such documentation pertaining to the involved claims as I could.  I caused a search to be conducted of such local claims offices as were still affiliated with NHCA, such as HSNNY, Brompton Heights and Orchard Heights.  I caused a search to [be] made at a storage facility in Lancaster, New York for all [files] appearing to contain relevant documents, whether those had previously been maintained at facilities that had since been closed but not sold to a third-party such as

Genesis, or, at NHCA's office here in Buffalo. I caused a search to be made for any relevant documents to be made of my offices [sic].

Dkt. #136, ¶ 18.

Mark Hamister testified at his deposition that every general manager at each local office was responsible for filing the workers' compensation claim forms, but he was not aware whether the local offices were responsible for maintaining files of documents relating to workers' compensation claims. Dkt. #124-4, pp.15-16.

NHCA substituted counsel in June of 2008. Dkt. #95.

Following Mr. Turesky's deposition, and in anticipation of a status conference scheduled before the Court, Liberty Mutual advised the Court that

Turesky's testimony confirmed that NHCA has woefully failed to comply with its discovery obligations. Specifically, NHCA: (a) failed to take any steps to determine the location of Claims Records maintained by it prior to 1998; (b) failed to produce Claims Records that were to be maintained pursuant to its own document retention policy; and (c) failed to properly search for and produce Claims Records maintained on its computers.

Dkt. #124-13, p.3. Liberty Mutual noted that NHCA had failed to

produce any claims files and, except for the "First Report of Injury or Illness," has failed to produce any Claims Records for most of the claims that were to be maintained by it pursuant to the Document Retention Policy. Not even the "first Report of Injury or Illness" was produced for some claims.

Dkt. #124-13, p.3. During the course of the status conference, the Court directed

NHCA to provide Liberty Mutual information regarding the sale or transfer of NHCA offices and to retrieve records in existence at its remaining offices.

By Notice of Motion dated July 21, 2006, Liberty Mutual sought to compel NHCA to produce a witness for deposition with knowledge of NHCA's record keeping practices from January 1996 through the present and of what happened to NHCA's offices and their records when NHCA's local offices ceased operations. Dkt. #65. Liberty Mutual noted its concern that NHCA had allowed key evidence in this matter to be destroyed. Dkt. #65-2, ¶ 5. The motion to compel was denied without prejudice pending another conference with the Court. Dkt. #105. At that conference, the Court directed NHCA to provide Liberty Mutual with information regarding the location of the local office claim files and, if the location was unknown, to provide Liberty Mutual with the name and current location of the person who was the office manager when the office closed. Dkt. #112.

In response to the Court's Order, Mr. Turesky submitted an affidavit dated January 14, 2009, stating that three insureds remained affiliated with NHCA and that he had contacted the managers of those three offices and asked them to search for documents relating to workers' compensation claims handled by Liberty Mutual. Dkt. #124-15, ¶ ¶ 3-4. Mr. Turesky reported that in response to his request, the manager at Health Services of Northern New York discovered files for seven employees with workers' compensation claims handled by Liberty Mutual. Dkt. #124-15, ¶ 4.

Liberty Mutual objected that NHCA failed to identify the managers at the three offices which were still affiliated with NHCA and failed to provide any information regarding the managers of offices no longer affiliated with NHCA.  Dkt. #124-17.  In a letter to the Court dated February 3, 2009, Liberty Mutual complained that NHCA continued to frustrate its attempts to discern what happened to the documents and claims files maintained by NHCA at its local offices.  Dkt. #124-18, pp.2-3.  Liberty Mutual noted that the documents belatedly discovered at Health Services of Northern New York, Inc. demonstrate that:

> (1) NHCA local offices kept detailed files and notes regarding the handling of claims; (2) that NHCA, through the local offices, was kept fully informed regarding and was fully involved in the handling of the worker's compensation claims; and (3) copies of all decisions regarding worker's compensation claims were sent directly to the NHCA local office handling the claim.

Dkt. #124-18, p.3.

By Order entered February 25, 2009, the Court determined that Mr. Turesky's affidavit was "not responsive to the Court's Order, which clearly directed NHCA to provide [Liberty Mutual], at the very least, with the name of the person who was the office manager at the time the local offices closed."  Dkt. #117, p.2.  The Court also noted its "concern with NHCA's efforts to preserve and produce documents relevant to this lawsuit, as evidenced by its belated disclosure of seven additional claims files recently discovered at a local office.  Dkt. #117, pp.2-3.  As a result, the Court directed NHCA to provide Liberty Mutual with the name and most recent contact information for the office manager of each local office which was no longer controlled by

NHCA.  Dkt. #117, p.3.  In addition, NHCA was directed to prepare an affidavit, by someone with personal knowledge, setting forth the specific steps undertaken by NHCA to obtain, maintain, and preserve all documents related to each workers' compensation claim that NHCA alleges that Liberty Mutual mishandled and the disposition of every office no longer controlled by NHCA in which an employee asserted a workers' compensation claim that NHCA alleged was mishandled by Liberty Mutual.  Dkt. #117, p.3.  NHCA was further directed to document its efforts to obtain, maintain, and preserve all documents related to each workers' compensation claim which NHCA alleged Liberty Mutual mishandled, or certify that no such documents had been located despite a diligent search.  Dkt. #117, p.3.  The Court warned NHCA "that it's failure to comply with this Order, in both form and substance, risks sanction from the Court, including, but not limited to, contempt and preclusion."  Dkt. #117, p.4.

        Phyllis Dumas, the scheduler/payroll clerk at Health Services of Northern New York between May of 1994 and November of 1999, was deposed on March 6, 2009.  Dkt. #124-23, pp.4-5.  Ms. Dumas testified that she completed workers' compensation forms for employees and maintained them, along with doctor's notes, in the employee's personnel file at the local office.  Dkt. #124-23, p.6.  Elizabeth Boyd took over Ms. Dumas' duties early in 2000 and began culling the workers' compensation information out of the personnel files and into separate workers' compensation files containing forms, correspondence from the Board and insurance carrier and her notes of communications with the employee and insurance carrier.  Dkt. #124-24, pp.5-6 & 12.  She also maintained notes and e-mails on her computer.  Dkt.

-9-

#124-24, pp.17 & 20-21.   When Ms. Boyd left the local office in 2004, she filled approximately six banker's boxes with workers' compensation files and left them in her office.  Dkt. #124-24, pp.23 & 25-26.

By affidavit dated March 13, 2009, Mr. Turesky provided the Court with the business address for each of the local offices which were no longer controlled by NHCA, and the name of the last known administrator, but no contact information for those individuals.  Dkt. #124-21, ¶ 6.  Mr. Turesky further advised that any records maintained at those offices had been provided to plaintiff's counsel when the offices were closed or sold.  Dkt. #124-21, ¶ 13.  Mr. Turesky also provided copies of two e-mails, dated January, 2009, indicating that no records had been found at two of the facilities still affiliated with NHCA.  Dkt. #124-21.

Liberty Mutual objected to NHCA's response and requested permission to file a motion for preclusion and costs and attorneys' fees.  Dkt. #124-22.

By Stipulation entered May 28, 2009, NHCA limited its claims that Liberty Mutual's handling caused monetary damage or caused additional deductible obligations to be incurred to nine workers' compensation claims: (1) Robin Allen; (2) Kathleen Hewitt; (3) Donna Brewster; (4) Patricia Hintz; (5) Beth Walton-Goza; (6) Sharon Simmons; (7) Edith Streeter; (8) Cheryl Law; and (9) Francis Bartlett.  Dkt. ##133 & 134.

## DISCUSSION AND ANALYSIS

Although NHCA entered into a stipulation limiting its claims for damages to nine workers' compensation claims, Liberty Mutual notes that NHCA initially challenged 152 claims, but produced documentation with respect to only 19 claims. Dkt. #142, p.11. All of the 19 local office claims files came from Health Systems of Northern New York. Dkt. #135, ¶ 7; Dkt. #142, ¶ 27. Only five of the 19 claims for which documentation was produced – those relating to Donna Brester; Sharon Simmons; Edith Streeter; Cheryl Law; and Francis Bartlett – are included within the Stipulation limiting this action to nine workers' compensation claims. Dkt. #142, p.11. Thus, NHCA has not produced any local office documents with respect to four of the nine claims which remain at issue in this lawsuit. Dkt. #142, ¶ ¶ 30 & 60. Moreover, Liberty Mutual argues that NHCA can provide no assurance that the documentation it has produced is complete. Dkt. #142, ¶ 31.

Liberty Mutual avers that the local office claims files "would establish and provide evidence that Liberty Mutual thoroughly communicated with NHCA regarding the handling of claims and that NHCA's personnel responsible for overseeing claims were in agreement with Liberty Mutual's handling of the claims." Dkt. #124-2, ¶ 16. Liberty mutual alleges that

> The failure of NHCA to maintain its claims files prevents Liberty Mutual from access to the very evidence (such as file notes) that shows that NHCA was on board with many of the decisions Liberty Mutual made and that such decisions were appropriate based on the circumstances known at the time. These files would also have showed that Liberty Mutual was

diligently handling the claims and was acting in a manner consistent with any duty of good faith and fair dealing.

Dkt. #124-2, ¶ 17.

NHCA responds that although they were not denominated as workers' compensation files, it did produce responsive documents in its April 28, 2005 Supplemental Response to Defendant's Second Notice to Produce. Dkt. #138, p.3. NHCA also notes that in response to the Court's Order, it discovered local office files for seven additional claimants. Dkt. #138, p.5. NHCA argues that there is a distinction to be made between its inability to provide complete information and willful non-compliance with the Court's directives. Dkt. #138, p.10. NHCA further argues that the documents produced refute Liberty Mutual's allegation that NHCA destroyed evidence, let alone that they did so with a culpable state of mind. Dkt. #138, p.12. Finally, NHCA argues that its compliance with the Court's directives should be measured not from the perspective of what information NHCA may have had access to in the past, but by the information available to NHCA at the time those orders were issued. Dkt. #138, p.14.

Liberty Mutual replies that NHCA had an obligation, as early as June of 2000, when Mr. Turesky initially threatened suit against Liberty Mutual, and certainly no later than October 29, 2001, when NHCA commenced this action, to locate and preserve documents relevant to its claims. Dkt. #142, p.3. Liberty Mutual complains that NHCA has yet to provide any information to assess when and how it first attempted to locate documents related to its claims or who was responsible for doing so. Dkt.

#142, p.3.  In addition, Liberty Mutual argues that by failing to provide it with the contact information for the office managers at the time the local offices ceased operations, NHCA has frustrated Liberty Mutual's attempts to pursue discovery of this information from non-party witnesses.  Dkt. #142, p.17.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  "A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order."  *Id.*  Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation."  *Id.*  The rationale for sanctions "derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).

Sanctions, including dismissal of the lawsuit, preclusion of evidence, or an adverse inference jury instruction, should be crafted to serve the prophylactic, punitive, and remedial rationales of: (1) deterring parties from engaging in spoliation; (2) placing the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restoring the prejudiced party to the same position he would have been absent the wrongful destruction of evidence by the opposing party.  *Id.*  Dismissal should be

imposed only in extreme circumstances after due consideration of alternative, less drastic sanctions.  *Davis v. Speechworks Int'l,* 03-CV-533, 2005 WL 1206894, at *3 (W.D.N.Y. May 20, 2005).

A party seeking sanctions for spoliation of evidence must establish that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin*ancial Corp., 306 F.3d 99, 107 (2d Cir. 2002).

The obligation to preserve evidence "arises when a party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."  *Byrnie v. Town of Cromwell Bd. of Ed.*, 243 F.3d 93, 107 (2d Cir. 2001); *Kronisch*, 150 F.3d at 126.

The "culpable state of mind" requirement is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.  *Residential Funding*, 306 F.3d at 108; *Byrnie*, 243 F.3d at 109.  As the Court of Appeals for the Second Circuit explained:

> It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

*Residential Funding*, 306 F.3d at 108, *quoting Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991). "However, where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence." *Turner*, 142 F.R.D. at 77. Generally speaking, "[t]he level of intentionality goes directly to the degree of severity of any sanction that may be warranted." *Barsoum v. New York City Housing Auth.*, 202 F.R.D. 396, 400 (S.D.N.Y. 2001). Thus, even though dismissal of a lawsuit is a "drastic remedy," it "is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *West*, 167 F.3d at 779.

With respect to the third factor, the Court of Appeals for the Second Circuit has made clear that something more than would satisfy Rule 401 of the Federal Rules of Evidence is required. *Residential Funding, 306 F.3d* at 108-09. "Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Id.* at 109 (internal quotations omitted). Where the destruction was done in bad faith, or with

gross negligence, the culpability of the party may provide sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party. *Id.* Relevance may also be established through other evidence, such as deposition testimony, demonstrating the nature of the missing evidence. *Id.* However, no sanction is appropriate where "there is no extrinsic evidence tending to show that the destroyed evidence would have been unfavorable to the spoliator." *Turner*, 142 F.R.D. at 77.

Applying these principles to the instant case, the Court determines that NHCA had an obligation, at least by the time it commenced suit against Liberty Mutual, to identify and maintain documents which supported its broad allegations of mishandling of workers' compensation claims. Despite multiple opportunities afforded NHCA to affirm that it did, in fact, take timely steps to identify and maintain documents relating to its workers' compensation claims with Liberty Mutual, NHCA has been unable to do so. Although discovery has revealed that communications regarding the relevant workers' compensation claims were conducted between the local offices and Liberty Mutual, no one has been able to affirm that the local offices were asked to identify and preserve documents in their possession relating to the workers' compensation claims with Liberty Mutual prior to Mr. Turesky's January, 2009 request to the three local offices remaining under NHCA's control (which resulted in the discovery of local office documents relating to the workers' compensation claims of seven employees). Dkt. ## 124-15, ¶ 4 & 124-21, ¶ 15. Prior to that Court-ordered communication, Mr. Tuersky denied any knowledge of what documents, if any, local

offices may have maintained and, although Mr. Hamister understood that every general manager at each local office was responsible for filing the workers' compensation claim forms, he was similarly unaware whether the local offices maintained files of documents relating to workers' compensation claims. Dkt. #124-4, pp.15-16. The clear inference to be drawn from NHCA's responses is that the local offices were not asked to identify and preserve documentation relating to the workers' compensation claims with Liberty Mutual at or about the time this action was commenced.

The failure of NHCA to identify and preserve communications between local offices and Liberty Mutual at the inception of this lawsuit is, at best, negligent. At worst, it calls into question the adequacy of NHCA's investigation into the merits of its claims. For example, how can NHCA claim that Liberty Mutual failed to keep NHCA apprised of the status of claims or failed to heed NHCA's suggestions regarding the handling of claims when NHCA appears to have made no effort to obtain documentation from the local offices managing the workers' compensation claims as to their communication with Liberty Mutual with respect to these issues?

The difficulty the Court perceives with Liberty Mutual's request for dismissal or preclusion is that the absence of NHCA's documentation appears far more detrimental to NHCA than Liberty Mutual. Absent documentation that NHCA expressed an opinion or provided information to Liberty Mutual with respect to the handling of any particular claim, the Court finds it difficult to comprehend how NHCA will present a case-in-chief with respect to those claims alleging Liberty Mutual failed to heed NHCA's

suggestions. With respect to those claims that are independent of NHCA's communications with Liberty Mutual, the Court finds the absence of documentation from NHCA's local offices irrelevant to Liberty Mutual's defense. In essence, the Court is of the opinion that the absence of documentation from NHCA's local offices harms NHCA's ability to prove some of its claims without impacting Liberty Mutual's ability to present its own documentation regarding the handling of NHCA's workers' compensation claims in defense of all of NHCA's claims. Thus, the Court finds dismissal of plaintiff's nine remaining claims or preclusion of evidence in support of those claims is unwarranted.

However, the Court does believe that NHCA should be sanctioned for its lack of candor in responding to Liberty Mutual's discovery demands and this Court's multiple Orders. Liberty Mutual advised NHCA that it believed that NHCA's document production was incomplete and specifically requested documents it expected to have been generated and filed within the local offices. The Court conducted multiple conferences attempting to discern from NHCA where the documents NHCA produced had originated; what steps NHCA had taken to gather information from the local offices; and when it had undertaken such steps. In response, NHCA quibbled over the definition of "claims files;" denied knowledge or possession of any files concerning communications with Liberty Mutual; failed to inform Liberty Mutual that the documents originally produced were stored in a box entitled "workers comp. claims @ existing subsidiaries originals;" and failed to discover (until January, 2009), files for seven workers' compensation claims at a local office which remained affiliated with NHCA.

Dkt. #124-9; Dkt. #124-12, pp.9-10 & 19-20 & Dkt. #135. Moreover, despite two Orders directing NHCA to identify the name and contact information for the office managers at NHCA offices no longer under its control (the second Order warning NHCA "that its' failure to comply with this Order, in both form and substance, risks sanctions from the Court"), NHCA failed to provide contact information for these individuals. Dkt. #112; Dkt. #117, pp.3-4; Dkt. #124-21, ¶ 6.

In weighing the appropriate sanction, the Court is mindful of the amount of time that has been spent attempting to address this issue as well as the potential difficulty in parsing the time Liberty Mutual spent addressing this particular discovery issue from its litigation of this matter in general. The Court is also hesitant to engender additional motion practice over attorneys' fees. As a result, the Court recommends a sanction of $5,000, which the Court deems a reasonable approximation of the attorneys' fees Liberty Mutual would be expected to have incurred in its quest to discover documents from NHCA's local offices.

## CONCLUSION

For the foregoing reasons, it is recommended that Liberty Mutual's motion to dismiss or preclude be denied but that it's motion for attorneys' fees be granted in the amount of $5,000.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of</u>

Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:        Buffalo, New York
              January 4, 2010


 **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**